IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| POOJA MUNDRATI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | Civil Action No. 23-1860 |
| ) | |
| UNUM LIFE INSURANCE COMPANY OF ) | Magistrate Judge Patricia L. Dodge |
| AMERICA d/b/a UNUM, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Pooja Mundrati brought this action against Defendant Unum Life Insurance Company of America d/b/a Unum, asserting a claim under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1100-1145 ("ERISA"). Her claim arose from Defendant's decision to deny her claim for long-term disability ("LTD") benefits.

On March 24, 2025, a Memorandum Opinion (ECF No. 49) and orders (ECF Nos. 50, 51) were issued that granted Plaintiff's motion for summary judgment and denied a motion for summary judgment filed by Defendant. Judgment was entered in Plaintiff's favor. On April 21, 2025, Defendant filed a notice of appeal (ECF No. 56).

On April 7, 2025, Plaintiff filed a motion for attorney's fees and costs (ECF No. 53), which has been fully briefed (ECF Nos. 59, 72). For the reasons below, Plaintiff's motion will be granted, but the requested fees will be adjusted as discussed below.

I.   **Relevant Procedural History**

Plaintiff commenced this action on October 27, 2023, invoking federal question jurisdiction based on the ERISA claim. 28 U.S.C. § 1331, 29 U.S.C. § 1132(a)(1)(B), (e). Following the submission of the administrative record, cross-motions for summary judgment were

filed on June 17, 2024 (ECF Nos. 23, 26), and were fully briefed (ECF Nos. 24, 30, 39, 42, 44, 46). Oral argument was held on January 22, 2025.

On March 24, 2025, the Court filed a Memorandum Opinion and corresponding orders that granted Plaintiff's motion for summary judgment and denied Defendant's motion. The Court held that Defendant acted arbitrarily and capriciously in denying Plaintiff's request for LTD benefits in the following respects: (1) Defendant's decision to classify regular Plaintiff's occupation as "physician" performing light duties rather than "physiatrist" or "Interventional Spine Physician" performing medium duties was contrary to the evidence and the requirements of the Policy; (2) Defendant provided no basis for refusing to consider records from after the Elimination Period based on "time relevance" when there was no evidence that Plaintiff's condition deteriorated subsequently; and (3) Defendant did not order an IME even though Plaintiff had subjective symptoms and instead resolved the case by relying on a review of the paper record by its doctors, including Dr. Norris, who had a history of making questionable record review decisions in favor of Unum and who selectively quoted from the record, and ignored the opinions of her treating physicians.

Defendant filed a notice of appeal and the case is on appeal with the United States Court of Appeals for the Third Circuit.

On April 7, 2025, Plaintiff filed a motion for attorney's fees and costs. In response, Defendant moved to stay resolution of Plaintiff's motion until Defendant's appeal is resolved (ECF No. 58). On May 28, 2025, the Court denied Defendant's motion to stay. (ECF Nos. 64, 65.)

The parties then filed two stipulations to extend the deadline for Defendant's response to Plaintiff's motion which were granted. On July 21, 2025, Defendant filed its response in opposition to Plaintiff's motion for attorney's fees and costs (ECF No. 72).

**II.    Analysis**

    A. <u>Standard of Review</u>

Rule 54 provides that a motion for attorney's fees must:

> (i) be filed no later than 14 days after the entry of judgment;
> (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award;
> (iii) state the amount sought or provide a fair estimate of it; and
> (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B). Plaintiff seeks attorney's fees under ERISA, which states that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1).

The Supreme Court has stated that "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (citation omitted).

Here, it is undisputed that Plaintiff achieved "some degree of success on the merits" since she was awarded summary judgment in her favor. Defendant does not contend otherwise.

Although there is "no presumption that a successful plaintiff in an ERISA suit should receive an award in the absence of exceptional circumstances," *McPherson v. Emp.'s Pension Plan of Am. Re-Insurance Co.*, 33 F.3d 253, 254 (3d Cir. 1994), the Court of Appeals for the Third Circuit has acknowledged that ERISA defendants "often bear the burden of attorneys' fees for a prevailing plaintiff or plaintiff class, thus 'encourag[ing] private enforcement of the statutory substantive rights, whether they be economic or noneconomic, through the judicial process.'" *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2002) (quoting Report of the Third Circuit Task Force, Court Awarded Attorney Fees 15 (Oct. 8, 1985), reprinted at 108 F.R.D. 237, 250)). The next step is to evaluate the appropriate factors.

B. <u>Evaluation of Relevant Factors</u>

The Court of Appeals has held that in determining whether to make any award of fees under ERISA, courts should consider these five factors:

(1) the offending parties' culpability or bad faith;
(2) the ability of the offending parties to satisfy an award of attorneys' fees;
(3) the [deterrent] effect of an award of attorneys' fees against the offending parties;
(4) the benefit conferred on members of the . . . plan as a whole; and
(5) the relative merits of the parties' position.

*Ursic v. Bethlehem Mines*, 719 F.2d 670, 673 (3d Cir. 1983) (citation omitted). *See Templin v. Indep. Blue Cross,* 785 F.3d 861, 868 (3d Cir. 2015) ("District courts are required to consider each of the *Ursic* factors").[1] The Court of Appeals has explained that "the *Ursic* factors are not requirements in the sense that a party must demonstrate all of them in order to warrant an award of attorney's fees, but rather they are elements a court must consider in exercising its discretion." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 275 (3d Cir. 2004).

1. Unum's Bad Faith or Culpability

The Court of Appeals has provided guidance with respect to the issue of bad faith:

The first *Ursic* factor favors an award to the prevailing party not only in cases involving "bad faith" but in other cases as well. As the district court recognized, bad faith normally connotes an ulterior motive or sinister purpose. *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986). A losing party may be culpable, however, without having acted with an ulterior motive. In a civil context, culpable conduct is commonly understood to mean conduct that is "blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault.... Such conduct normally involves something more than simple negligence.... [On the other hand, it] implies that the act or conduct spoken of is reprehensible or wrong, but not that it involves malice or a guilty purpose." *Black's Law Dictionary* (6th ed. 1990). Thus, in *Vintilla v. United States Steel Corp. Plan*, 642 F. Supp. 295, 296-97 (W.D. Pa. 1986), *aff'd*, 815 F.2d 697 (3d Cir. 1987), *cert. denied*, 484 U.S. 847, 108 S. Ct. 143, 98 L.Ed.2d 100 (1987), for example, the court concluded with respect to the first *Ursic* factor: "While we cannot ascribe bad faith to plaintiffs' efforts, we do find certain elements of culpability attributable to plaintiffs." Indeed, this court in

---

[1] Defendant does not dispute its ability to pay. (ECF No. 72 at 4.) Thus, this factor weighs in favor of awarding fees. *See Ellison v. Shenango Inc. Pension Bd.*, 956 F.2d 1268, 1277 (3d Cir. 1992).

>   *Groves v. Modified Retirement Plan, Inc.*, 803 F.2d 109 (3d Cir. 1986), found an award of counsel fees to be appropriate in an ERISA case without finding that the defendants had acted with an ulterior or sinister purpose.

*McPherson*, 33 F.3d at 256-57.

Plaintiff contends that, because the Court determined that Defendant acted arbitrarily and capriciously in denying her claim for LTD benefits, the first factor is satisfied. *See Rizzo v. First Reliance Standard Life Ins. Co.*, 2023 WL 6923494, at *3 (D.N.J. Oct. 18, 2023) ("applying the broad definition of culpability," the first and fifth *Ursic* factors weighed in favor of a fee award when the defendant arbitrarily and capriciously denied a claim). *Compare Reinert v. Giorgio Foods, Inc.*, 15 F. Supp. 2d 589, 598 (E.D. Pa. 1998) ("although the decision to deny benefits . . . was incorrect, the conduct of the Defendant's agents was not arbitrary and capricious.")

According to Defendant, "[a] party is not culpable merely because it has taken a position that did not prevail in litigation." *McPherson*, 33 F.3d at 257. In *McPherson,* the court concluded that the factual scenario did not represent a simple lapse of judgment or care. *Id.* at 258. Rather, the defendants had repeated opportunities over multiple years to reevaluate their position, but merely provided "new rationales for their ultimately unsustainable conclusion." *Id.*

Here, the Court did not conclude that Defendant exhibited a lapse in judgment. Rather, as outlined in the summary judgment opinion, it concluded that Defendant's denial of LTD benefits to Plaintiff was arbitrary and capricious. *See Berkoben v. Aetna Life Ins. Co.*, 2014 WL 3565959, at *11 (W.D. Pa. July 18, 2014) ("Aetna's bias and procedural irregularities, violation of ERISA notice requirements, and arbitrary reliance on its internal List, show culpability" and the first *Ursic* factor weighed for plaintiff). As Defendant acted culpably, this factor favors awarding attorney's fees.

2. Deterrence

The Court of Appeals has noted that: "it will further the objectives of ERISA if fee awards are employed to deter behavior that falls short of bad faith conduct." *McPherson*, 33 F.3d at 258 (citing *Kann v. Keystone Resources, Inc. Profit Sharing Plan*, 575 F. Supp. 1084, 1096-97 (W.D. Pa. 1983) (holding that, in a case in which "culpability . . . has been shown," fee award will make plan "less likely and not so quick to deny benefits to other participants" and thus be "a deterrent factor")).

In moving for attorney's fees, Plaintiff directs the Court's attention to several cases holding that awarding fees would have a deterrent effect. *See Curtin v. Unum Life Ins. Co. of Am.*, 298 F. Supp. 2d 149, 159 (D. Me. 2004); *Gross v. Sun Life Assur. Co. of Canada*, 763 F.3d 73, 84-85 (1st Cir. 2014).

In turn, Defendant argues that there is no need to "send a message" here. *See Reinert*, 15 F. Supp. 2d at 598-99 (find no reason to believe that the holding would have any particular deterrent on the defendant). But unlike the holding in this case, the *Reinert* court found that the defendant's conduct was not arbitrary and capricious.

As the Court's discussion of the record detailed, although this case presented some unique facts, it is not the first time that Unum failed to conduct an IME even when a claimant had subjective symptoms, relied on Dr. Norris's record review to reject the evidence of a plaintiff's treating physicians, or declined to consider evidence after the elimination period on the basis of "time relevance" even when a claimant's condition did not deteriorate. Thus, it is entirely possible that an award of attorney's fees may have a deterrent effect in future cases that present these issues. *See Berkoben*, 2014 WL 3565959, at *12 (finding that as defendant's conduct was arbitrary and capricious, award of fees would serve to deter it in the future, from arbitrarily and capriciously

6

terminating the LTD benefits of plan participants "thereby serving the objectives of ERISA.")

This factor also supports awarding fees.

### 3. Benefit Conferred on Members of the Plan as a Whole

Plaintiff observes that this Court's decision has been selected for publication in the Federal Supplement. *See Mundrati v. Unum Life Ins. Co. of Am.*, 772 F. Supp. 3d 567 (W.D. Pa. 2025). Thus, she contends that other members of the Plan and similar plans will benefit from issues such as considering relevant testing and medical records even if they are outside the Elimination Period. *See also Berkoben*, 2014 WL 3565959, at *13 (award of fees would confer an indirect benefit on all plan participants who request benefits under LTD policy by deterring insurer from denying or terminating benefits in the future without disclosing its reliance on its internal list.)

Defendant argues that "each case will ultimately turn on the particular evidentiary record before the plan administrator and whether the plan administrator properly construed that evidence." *Perri v. Reliance Standard Life Ins. Co.*, 1997 WL 688813, at *4 (E.D. Pa. Oct. 23, 1997). However, in *Perri,* the court evaluated whether an award of fees to the *insurer* would benefit the members of the plan as a whole and therefore does not apply to this situation.[2]

This factor weighs in favor of awarding fees.

### 4. Relative Merits of the Parties' Positions

As discussed above with respect to the first factor, Plaintiff argues that the Court rejected Defendant's positions and accepted nearly all of the positions she raised in the case. This factor

---

[2] In a footnote, Defendant cites a case which stated that this factor did not apply at all when the plan at issue was not a "pension plan." *See Gehin-Scott v. Newson, Inc.*, 1994 WL 396430, at *1 (E.D. Pa. July 28, 1994). That said, although the court in *Ursic* used this phrase, it did not make such a distinction and there is no principled basis for distinguishing pension plans from other types of plans covered by ERISA. Indeed, the cases cited by *Ursic* used the phrase "ERISA plan." *See Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980); *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

favors awarding attorney's fees. *See Berkoben*, 2014 WL 3565959, at \*14. Defendant again argues that its position, although ultimately unavailing, was not unjustified or taken with the intent to harass Plaintiff. As explained, however, Defendant need not have acted in bad faith and or with an intent to harass in order to award fees, and here, the Court found that its decision was arbitrary and capricious. Therefore, this factor also weighs in favor of awarding fees.

In summary, because the *Ursic* factors support an award of attorney's fees, the Court will proceed to consider the fees requested by Plaintiff.

### C. Fees and Costs

If the Court determines that an award of fees is warranted, the next step is to evaluate whether the amount requested is reasonable. In considering this issue, the Court of Appeals has stated that:

> A useful starting point for determining the reasonableness of the fee is the lodestar calculation. Under the lodestar approach, a court determines the reasonable number of hours expended on the litigation multiplied by a reasonable hourly rate. The product of this calculation "is a presumptively reasonable fee, but it may still require subsequent adjustment."

*Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 310 (3d Cir. 2008) (quoting *United Auto. Workers Loc. 259 Social Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 290 (3d Cir. 2007)).

The party requesting attorney's fees carries the burden of establishing the reasonableness of the fee. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) ("*ICO*") (citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990)). To satisfy this burden, the fee requesting party is required to provide evidence supporting the hours worked and the rate claimed. *Rode*, 892 F.2d at 1183 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party opposing the fee petition must present any objections, either in an affidavit or brief, with sufficient specificity to give the fee petitioner notice of the basis for its challenge to the

reasonableness of the requested fee. *Id.* (citations omitted). A district court is precluded from decreasing a fee award based on factors not raised by the opposing party. *Id.* (citations omitted). However, once the opposing party challenges the fee petition, the district court has wide discretion to adjust the fee award in light of the objections. *Id.*

Plaintiff seeks $126,648.50 in attorney's fees for 230.2 hours of work, consisting of the following: (1) $92,687.50, representing 148.3 hours by Marc Snyder at $625 per hour; and (2) $33,988.50, which representing 81.9[3] hours by Christopher Harris at $415 per hour. She has submitted a Fee Billing Report (ECF No. 53 Ex. B) that details the hours worked, and affidavits attesting to the reasonableness of the attorneys' hourly rates (ECF No. 53 Exs. C, D). Plaintiff has also submitted affidavits by Tybe Brett (ECF No. 53 Ex. E) and Adam Harrison Garner (ECF No. 53 Ex. F), attorneys who practice in ERISA-related matters, attesting to the reasonableness of their rates.

Defendant challenges both the hourly rates and the number of hours of legal work claimed by Plaintiff.

1. Hourly Rate

Defendant contends that Plaintiff has not met her burden to establish that the hourly rates sought by Plaintiff are reasonable. It notes that the decisions she cites in support of her counsel's hourly rates do not involve ERISA or disability insurance claims. *See Maldonado v. Houstoun*, 256 F.3d 181 (3d Cir. 2001) (civil rights claims); *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128 (3d Cir. 2018) (False Claims Act case). Defendant also argues that the use of the Community Legal Services, Inc. ("CLS") schedule is inappropriate as it reflects the Philadelphia,

---

[3] Harris's affidavit claims 81.7 hours (ECF No. 53 Ex. 5 ¶ 15). This appears to be a typographical error.

9

not Pittsburgh, legal market and applies generally to a wide swath of practice areas.[4]

In asserting that the hourly rates sought by Plaintiff are unreasonable, Defendant also cites to *Berkoben*, noting that in 2014, Judge Lenihan approved the rates sought by Attorney Snyder and his associate of $400 and $250, respectively. Defendant contends that by applying a growth rate of 3.4% per year (the average pace of law firm rate growth between 2010 and 2022 as documented by Thomson Reuters)[5] for the ten years between 2014 and "inception of the 2024 rate that would apply to the majority of the time spent in this case" (ECF No 72 at 8), the appropriate hourly rate for Snyder should be $559 and for Harris $349.

The Court of Appeals has held that, "in most cases, the relevant rate is the prevailing rate in the forum of the litigation." *ICO*, 426 F.3d at 705. There are two exceptions to the forum rate rule: (1) when a party demonstrates the need for "the special expertise of counsel from a distant district"; and (2) when a party shows that local counsel was "unwilling to handle the case." *Id.* at 706-07.

Plaintiff asserts that the proposed rates are within (for Harris) or below (for Snyder) the CLS schedule, that ERISA litigation is "a niche practice" and that very few attorneys handle such cases nationwide. However, the CLS scale is for lawyers in Philadelphia and the fact that the Court of Appeals approved of its use in the *Maldonado* and *Palmer* cases is not informative given that both cases "were on appeal from actions in the Eastern District of Pennsylvania, which sits in

---

[4] Defendant also asserts that even if the CLS rates are used, the scale for attorneys with Attorney Harris's 6-10 years of experience is $320 to $415 per hour. Thus, it argues, he is requesting payment at the very top of the scale, rather than say, the mid-point of $367.50. *See Palmer*, 897 F.3d at 138 (the district court was within its discretion to apply the mid-point of the CLS rates for a "reasonable" hourly rate). On the other hand, the Court notes that the CLS schedule for attorneys with Attorney Snyder's years of experience is $735 to $850 per hour, well above the $625 rate he seeks here.

[5] *See* https://www.thomsonreuters.com/en-us/posts/legal/law-firm-rates-bull-bear-base-case/

Philadelphia." *McDonnell v. KRG Kings LLC*, 2024 WL 3082737, at *3 (W.D. Pa. June 21, 2024) (Wiegand, J.) (declining to adopt CLS rates in Pittsburgh). *See also Zablotney v. Windber Hosp., Inc.*, 2024 WL 4344698, at *6 (W.D. Pa. Sept. 30, 2024) (Haines, J.) (declining to apply "the CLS fee schedule as it is not specifically tailored to the market rates of this district.") Similarly, the Declaration of Adam Harrison Garner, a Philadelphia ERISA attorney, who states that his hourly rate is $700 (ECF No. 53 Ex. F ¶ 21), is not dispositive of the appropriate rate in Pittsburgh. Thus, the Court concludes that the CLS schedule is not representative of the prevailing rates for lawyers in this community. The Court notes, however, that the hourly rates submitted by both attorneys are lower (Snyder) or comparable (Harris) to the current CLS fee schedule.

Plaintiff has also submitted the declaration of attorney Tybe Brett (ECF No. 53 Ex. E). Attorney Brett, a 1979 law school graduate, is based in Pittsburgh and has concentrated her practice on labor and employee benefits cases since 1995. As noted in her Declaration, she has substantial expertise in ERISA matters. She is familiar with Attorneys Snyder and Harris and states that they are "among the finest of the limited pool of experienced and qualified attorneys nationwide who successfully litigate ERISA claims on behalf of individual plaintiffs." (*Id.* ¶ 15.) Attorney Brett's current hourly rate is $645, which she charges to clients who pay her on an hourly basis. (*Id.* ¶ 14.)

Attorney Brett states that both Mr. Snyder's request for $625 per hour and the request of Mr. Harris for $415 per hour are reasonable. In part, she appears to base this on the rates of the national bar of attorneys who represent individual ERISA participants. (*Id.* ¶ 15.) As Attorney Brett is based in Pittsburgh, it is reasonable to determine that she is also basing her conclusion, at least in part, on her own hourly rate. However, her Declaration does not explicitly state that the rates that are the subject of Plaintiff's motion represent the reasonable market rates for legal services within Western District of Pennsylvania. Thus, Ms. Brett's affidavit does not conclusively

demonstrate the reasonableness of Mr. Snyder's rate for Pittsburgh. *See also Hawks v. PNC Fin. Servs. Grp. Inc.*, 2023 WL 11981197, at *9 (W.D. Pa. Aug. 16, 2023). Thus, the Court must exercise its discretion to determine reasonable hourly rates.

As it relates to Mr. Snyder, his primary area of practice and specialization for the past twenty-five years has been in the realm of representing plaintiffs in private and ERISA disability matters, including specializing exclusively in disability claims for at least the past fourteen years. He asserts that based on his experience and knowledge of ERISA and his 25 years of practice in this area, he believes that $625 is a reasonable and appropriate hourly rate. Ms. Brett, who charges $645 per hour, concurs with this assessment.

Mr. Harris has been admitted to practice since 2018 and became employed by Rosen Moss Snyder LLP in February 2024. He states that he enters into contingent fee arrangement with the vast majority of his clients. It is his belief that an hourly rate of $415 for his services is reasonable and appropriate given his experience as a litigator, including his strong legal writing and research skills and oral argument skills. He notes that this rate is within the CLS rates of $320 to $415 per hour. Attorney Brett states in her declaration that she has worked with Mr. Harris as co-counsel, is familiar with the quality and depth of his knowledge in ERISA matters and believes the requested rate of $415 is reasonable and appropriate.

Defendant employs a different approach, using the hourly rates that were approved for a lawsuit Snyder handled in 2014 and then applying a 3.4% "growth rate" for the period from 2014 "through the inception of the 2024 rate." According to Defendant, this results in an hourly rate of $559 for Mr. Snyder and $349 for Mr. Harris. There are several problems with this analysis, however. According to the source cited by Defendant on which it relies, the growth rate was 6% in 2023 and 6.5% in 2024. Use of these percentages rather than 3.4% undoubtably would lead to

12

higher hourly rates than those proposed by Defendant. Moreover, no growth rate or calculation has been provided for 2025, during which counsel for Plaintiff performed additional work. Therefore, Defendant's proposed calculation is incomplete or inaccurate based on the source it cited and cannot support the reduced rates that it proposes.[6]

Based on the available evidence, the Court concludes that the hourly rate of Mr. Snyder is reasonable. As reflected in his declaration, he is an experienced ERISA attorney with 25 years of experiencing litigating ERISA cases. As supported by the declarations of Attorneys Garner and Brett, there is a limited pool of experienced and qualified attorneys successfully representing individuals in ERISA claims. According to both attorneys, his skill and knowledge is superior. His hourly rate is significantly lower than Attorney Garner, who is based in Philadelphia and somewhat lower than the hourly rate of Attorney Brett, who is based in Pittsburgh. Therefore, the Court approves this rate.

As it relates to Mr. Harris, the declarations of Attorneys Brett and Garner also support the quality and depth of his knowledge on ERISA matters. Both state that his hourly rate is reasonable. Notably, however, no comparable rate for an attorney at his experience level in the Western District of Pennsylvania was provided, and the requested rate is at the top of the CLS scale, suggesting that it is high for this district. Therefore, considering the declarations, the difficulties in litigating ERISA matters and Mr. Harris's seven years as a practicing attorney, the Court concludes that a reduction in his hourly rate is appropriate. Therefore, fees for his services will be calculated at the hourly rate of $400 per hour.

---

[6] Indeed, if the 6% and 6.5% growth rate was calculated, and a growth rate had been provided for 2025, it is possible that even under Defendant's approach, Mr. Snyder's hourly rate is likely to be close to the requested rate of $625.

2. <u>Hours Expended</u>

Defendant challenges the following entries as excessive or duplicative:

- Defendant contends that Mr. Snyder's additional 19.9 hours reviewing the claim file after the initial 14.6 hours is excessive and should be stricken or appropriately reduced.

- Mr. Harris spent 14.8 hours reviewing the claim file on March 4, 2024, March 5, 2024, and March 6, 2024, in addition to some unspecified time for "legal research on Third Circuit ERISA law." Defendant contends that this time is duplicative and should be stricken or appropriately reduced.

- Both Mr. Snyder and Mr. Harris attended mediation on April 26, 2024, with Mr. Harris billing 4.5 hours for "mediation" and Mr. Snyder block-billing 7.0 hours for "pre-mediation review of records, mediation, post-mediation call with client." Defendant contends that the time for two attorneys at mediation was duplicative and Mr. Harris's time should be stricken or appropriately reduced.

- From May 6, 2024 to May 28, 2024, Mr. Snyder spent 40.1 hours researching and drafting Plaintiff's Motion for Summary Judgment. Defendant contends that this time is excessive (particularly time for research by an experienced attorney like Mr. Snyder) and should be appropriately reduced to 20 hours or another reduced number.

- In preparation for oral argument on the parties' Cross-Motions for Summary Judgment, Mr. Snyder billed 18.5 hours and Mr. Harris billed 33.7 hours, but only Mr. Harris argued the Motion. Defendant contends that Mr. Snyder's time spent preparing for the argument that Mr. Harris conducted was duplicative, if not otherwise excessive, and should be stricken or appropriately reduced. Defendant also contends that Mr. Harris's time spent preparing for the argument was excessive and should be appropriately reduced to 20 hours or another reduced number.

Based on these arguments, Defendant contends that the hours sought should be reduced from 230.2 to 144. Using its proposed rates of $559 per hour for Mr. Snyder and $349 per hour from Mr. Harris, Defendant proposes a total of $70,227.00 in attorney's fees.

a. Review of claim files

As it relates to counsel's reviews of the claim files with respect to Mr. Snyder, his time entries fall into three categories: an initial detailed review related to initial investigation and preparation of the complaint; a subsequent review five months later in preparation for a mediation;

14

and another review in connection with preparation of Plaintiff's motion for summary judgment.

Added together, the time spent in total, more than thirty-four hours, is significant. However, each review was for a separate purpose, and individually, appropriate for the volume of documents and medical records associated with this case. Similarly, the time spent by Mr. Harris in the initial review of the file is consistent with Mr. Snyder's review and is not excessive given the additional time spent in legal research. Therefore, the Court will not reduce the hours sought by Plaintiff for these efforts.

### b. Mediation

Defendant also asserts that compensation for both Mr. Snyder and Mr. Harris to attend the mediation is duplicative. The Court agrees. As the records in Exhibit B reflect, Mr. Snyder was lead counsel and his billing entries reflect significant and appropriate time in preparation for the mediation, including preparation of a mediation memo and performing certain calculations of benefits. While the Court is not critical of Mr. Harris's attendance at the mediation, having two attorneys attend the mediation is duplicative. Accordingly, the fees sought will be reduced by 4.5 hours, the time billed by Mr. Harris for attending the mediation.

### c. Summary judgment

As it relates to time billed by Mr. Snyder in connection with preparation of Plaintiff's motion for summary judgment, Defendant contends that the time spent on doing so is excessive and seeks a reduction. The issues here are complex and involve review of a substantial number of medical and claim-related documents over a five-year span. The time entries submitted by Mr. Snyder include organizing Plaintiff's medical and claim history, identifying relevant exhibits, drafting a forty-paragraph concise statement of facts with multiple references to medical reports and records and drafting twenty five-page brief. That Mr. Snyder is an experienced ERISA attorney

15

does not mean that he was not required to fully review and brief this matter. Therefore, the Court will not reduce the time submitted.

### d. Oral argument

According to Defendant, since Mr. Harris, not Mr. Snyder, participated in the oral argument on the motions for summary judgment, the time spent by Mr. Snyder preparing for the argument was duplicative and should be stricken or reduced. As reflected in Exhibit B, Mr. Snyder billed 18.5 hours for oral argument preparation. While the Court understands the need for collaboration before argument on dispositive cross-motions for summary judgment, this time is excessive given that Mr. Harris billed another 27.1 hours for preparation before the date of the oral argument. Therefore, the Court will reduce Mr. Snyder's hours by six hours for the time spent on January 14, 2025, which included a moot argument.

With respect to Mr. Harris, while the Court does not question that the time was spent, it also appears to reflect additional time that an attorney less experienced than Mr. Snyder may take in preparing for oral argument in connection with cross-motions for summary judgment in a significant matter. Thus, the Court concludes that the time billed for oral argument preparation should be reduced. The Court will reduce his time for oral argument preparation by the six hours billed on January 14, 2025 and by another 5 hours.

### e. Revised fees

In summary, the following adjustments are made:

Snyder: A reduction from 148.3 hours to 142.3 hours. Therefore, total fees awarded for Snyder's work will be $88,937.50.

Harris: His total hours will be reduced from 81.9 to 70.9. Applying the revised hourly rate of $400 per hour, total fees for Harris's work is $28,360.00.

Thus, the grand revised total is $117,297.50 in fees.

### 3. Costs

Plaintiff seeks to recover costs as follows: (a) the filing fee of $405.00; (b) Mr. Harris's pro hac vice admission fee of $70.00; and (c) the cost of the mediator, $1,012.50. These amounts total $1,487.50.

Defendant contends that Plaintiff cannot recover the mediator's fee because, under the parties' ADR stipulation, each side agreed to bear 50% of the cost of mediation. *See Mullins*, 2025 WL 712931, at *6 (Ranjan, J.) ("Mr. Mullins cannot now recover this cost as he agreed to pay it and it was incurred as part of the Court's mandatory ADR process for civil cases.") (citing *Kairys v. S. Pines Trucking, Inc.*, 2022 WL 1457786, at *2 (W.D. Pa. May 9, 2022) (Ranjan, J.) ("Shifting those costs after trial would be contrary to that ADR agreement and would undermine the 'spirit' of the ADR cost-sharing arrangement."), *aff'd*, 75 F.4th 153 (3d Cir. 2023)).

The Court does not find this reasoning persuasive. Engaging in mediation is required by this District's Local Rules and so paying a mediator's fees is not substantively different from paying the filing fee or the pro hac vice fee. All of them are part of the "cost" of proceeding with a case in this Court. *See Berkoben*, 2014 WL 3565959, at *23 (allowing recovery of mediator's services as a "reasonable and necessary expense of the litigation."). Therefore, the Court will not deduct Plaintiff's portion of the mediator's fee from the costs sought here.

Therefore, Plaintiff will be awarded costs of $1,487.50.

## III. Conclusion

For these reasons, Plaintiff's Motion for Attorney's Fees and Costs will be granted and fees and costs will be awarded subject to the adjustments referenced herein.

An appropriate order will follow.

Dated: September 16, 2025         BY THE COURT:

                                  s/Patricia L. Dodge
                                  PATRICIA L. DODGE
                                  UNITED STATES MAGISTRATE JUDGE